UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM L. POWELL,<br><br>    Plaintiff,<br><br>    v.<br><br>A. ALBRECHT, et al.,<br><br>    Defendants. | No.  2:23-cv-0520 DAD AC P<br><br>ORDER |

Plaintiff is a state inmate who filed this civil rights action without a lawyer pursuant to 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; Section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794; and state law.  He has requested leave to proceed without paying the full filing fee for this action, under 28 U.S.C. § 1915.  Plaintiff has submitted a declaration showing that he cannot afford to pay the entire filing fee.  See 28 U.S.C. § 1915(a)(2).  Accordingly, plaintiff's motion to proceed in forma pauperis is granted.[1]  Plaintiff has also filed a motion to amend the complaint.  ECF No. 11.

---

[1] This means that plaintiff is allowed to pay the $350.00 filing fee in monthly installments that are taken from the inmate's trust account rather than in one lump sum. 28 U.S.C. §§ 1914(a). As part of this order, the prison is required to remove an initial partial filing fee from plaintiff's trust account. See 28 U.S.C. § 1915(b)(1). A separate order directed to the appropriate agency requires monthly payments of twenty percent of the prior month's income to be taken from plaintiff's trust account.  These payments will be taken until the $350 filing fee is paid in full. See 28 U.S.C. § 1915(b)(2).

1

I.      Motion to Amend

Plaintiff has filed a motion to amend the first amended complaint to include exhibits and to include requests for monetary and declaratory relief. ECF No. 11. However, the court does not rely on exhibits in determining whether a complaint states a viable claim, and the first amended complaint already seeks monetary and declaratory relief, see ECF No. 8 at 19-21 (requested relief), making amendment on those grounds unnecessary. However, as addressed below, some of plaintiff's claims have not been sufficiently pled, and he will be given the option of amending the complaint to try and fix the problems with those claims. Therefore, the motion to amend will be granted to the extent plaintiff is being given the option of filing an amended complaint.

II.     First Amended Complaint

A.      Statutory Screening of Prisoner Complaints

The court is required to screen complaints brought by prisoners seeking relief against "a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous if it is based on an indisputably meritless legal theory or factual contentions that are baseless. Id., 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute on other grounds as stated in Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

In order to avoid dismissal for failure to state a claim a complaint must contain more than "naked assertion[s]," "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim upon which the court can grant relief has facial plausibility. Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). When considering whether a complaint states a claim, the court must accept the allegations as true, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and construe the complaint in the light most favorable to the plaintiff, Jenkins v. McKeithen, 395 U.S. 411, 421 (1969) (citations omitted).

B.     Factual Allegations of the Complaint

The complaint alleges that defendants Albrecht, Jodin, Murphy, Deforest, St. Andre, and Morris violated plaintiff's rights under the First, Fourth, Eighth, and Fourteenth Amendments, as well as the ADA, the RA, and state law. ECF No. 8. Defendants are sued in their individual and official capacities. Id. at 1-2.

Plaintiff alleges that on September 8, 2022, Jodin took him from his cell to another location and placed him on a body scanner, where Morris scanned his body two separate times. Id. at 16, 18. After having his body scanned, plaintiff was placed in a holding cage where he was left in handcuffs for hours. Id. at 16. When Jodin returned, he forced plaintiff into an SUV with Albrecht and Murphy, took plaintiff to radiology where Morris was again present, and plaintiff was x-rayed multiple times despite having already been subjected to two body scans. Id. at 16, 18. Albrecht threatened plaintiff by telling him he would be forced to defecate on himself, regardless of what the x-rays showed, if he did not tell them where the contraband was. Id. at 16. Plaintiff responded that there was no contraband, which should be clear after four x-rays. Id. Albrecht and Jodin then forced plaintiff, who was still handcuffed despite his complaints of shoulder pain, back into the SUV, and Murphy drove them back to the holding cage. Id. Once back in the holding cage, plaintiff remained handcuffed while Albrecht interrogated him and then left him for several more hours. Id. at 16. When plaintiff complained about severe shoulder and back pain to another officer, the officer uncuffed him and told him to return to his assigned housing unit. Id. at 16-17. Upon return to his assigned cell, plaintiff was told that he was locked out of his cell and had been moved to another cell. Id. at 17.

Plaintiff alleges that Albrecht, Jodin, and Murphy had searched his cell in Morris' presence as part of an investigation before locking out his cell with all of his property inside. Id.

3

at 6, 18. When plaintiff asked Albrecht and Jodin if he could get his prescription glasses, essential hygiene items, wedding ring, and religious necklace, Albrecht denied the request. Id. at 6. Another officer later told plaintiff that he had also asked Albrecht and Jodin, while Murphy was present, if plaintiff could be given his prescription glasses and a few other items, but the request was refused. Id.

On September 14, 2022, plaintiff submitted a grievance against Albrecht and Jodin and spoke with an officer about contacting a supervisor so he could get access to his glasses and other personal property. Id. at 7, 9, 12. Later that day, Albrecht and Jodin, along with other unidentified officers, then began throwing plaintiff's property over the tier into a garbage bin and Albrecht was overheard saying, "Since they want to contact my superiors about their property and make noise on their end, I'll make noise on my end and 'Fuck 'em.'" Id. Albrecht also refused another request to return plaintiff's glasses. Id.

On September 21, 2022, Albrecht and Jodin again refused to return plaintiff's property and instead had him sign a property inventory and confiscation slip, which they did not provide him copies of, and failed to explain what the documents recorded despite knowing that plaintiff required effective communication due to his 2.0 TABE score and vision impairment. Id. at 7-8, 10, 12. When plaintiff went to get his property, all his allowed property was missing, including his prescription glasses, and all of his cellmate's personal property and paperwork was in his box. Id. at 13. Plaintiff was ultimately without his glasses for almost four months and suffered from headaches, dizziness, the inability to see clearly, and fear of being preyed upon by other inmates. Id. at 6, 8, 21.

On September 23, 2022, plaintiff was issued three rules violation reports (RVRs) by Albrecht based on the September 8, 2022 search of his cell. Id. at 10. Albrecht later intercepted plaintiff's questions that were given to the investigative employee for plaintiff's witness, and Albrecht was seen asking the witness those questions. Id. Plaintiff filed an appeal about Albrecht's misconduct and Albrecht admitted during the appeal interview that he falsified dates in the RVR. Id.

////

On January 12, 2023, plaintiff was summoned to the programs office by defendant Deforest and was told he was being placed in administrative segregation for conspiracy to extort Albrecht and later received an RVR on those charges. Id. at 10-11, 14. Deforest, who was a lieutenant, was aware of his subordinate's misconduct, chose to ratify their misconduct and stated in an incident report that all of plaintiff's allegations of staff misconduct were false. Id. at 14.

Plaintiff submitted several grievances to defendant St. Andre, the warden, requesting intervention in unspecified staff misconduct, but St. Andre failed to respond to his requests for an interview and eventually signed off on an investigation finding that the alleged events either did not occur or may have occurred but did not involve the employees complained about. Id. at 15.

### C. Claims for Which a Response Will Be Required

After conducting the screening required by 28 U.S.C. § 1915A(a), the court finds that some of plaintiff allegations state valid claim for relief against defendants Jodin, Morris, Albrecht, and Murphy in their individual capacities. Specifically, the allegations that Jodin, Morris, Albrecht, and Murphy subjected plaintiff to multiple body scans and x-rays under conditions where he would not have had a chance to acquire contraband after the first body scan, are sufficient to state Fourth Amendment unreasonable search claims against those defendants. Plaintiff has also stated claims against Albrecht, Jodin, and Murphy for failure to protect based on the allegation that they ignored his complaints of shoulder pain after being handcuffed for hours and for deliberate indifference based on their denial of his requests for his prescription glasses.[2] The allegations that Albrecht and Jodin threw away plaintiff's property after he filed a grievance against them and complained to a supervisor are sufficient to state a claim for retaliation.

### D. Failure to State a Claim

However, the allegations in the complaint are not sufficient to state a due process claim against any defendant for depriving plaintiff of his property because the state of California has an adequate post-deprivation remedy. Plaintiff also fails to allege facts to show that the loss of his property sufficiently deprived him of basic necessities such that it rose to the level of an Eighth

---

[2] Although the complaint alleges Albrecht made the actual denial, Jodin and Murphy were both present for the requests and therefore could have intervened.

5

Amendment violation. To the extent plaintiff is attempting to raise claims under the ADA and RA based on the failure to return his glasses or explain the inventory and confiscation slips, his claims fail because he has not alleged facts showing that his vision impairment or low TABE score constituted disabilities within the meaning of either Act, that he was denied access to any program or service, or that he was discriminated against *because of* his disability. Plaintiff also fails to state claims based on the falsified RVRs because there is no right to be free from false accusations. He also has not alleged facts showing that the RVRs led to the loss of good time credits—entitling him to the limited due process protections for prison disciplinary charges—and that he was denied any of the required process (i.e., advanced written notice of the charges, written statement of evidence relied on, opportunity to call witnesses or present evidence, assistance if he is illiterate or the matter is complex, impartial fact finder, and some evidence to support the guilty finding). The allegations against Deforest and St. Andre are insufficient to state claims because they do not show that these defendants were aware of ongoing violations such that they had the opportunity to prevent them. Plaintiff's allegations against Deforest state that he ratified the conduct, indicating the conduct at issue was already completed, while the allegations against St. Andre are vague as to what "staff misconduct" he was reporting such that the court can infer St. Andre was aware of and failed to intervene in an ongoing violation. Finally, plaintiff's official capacity claims against defendants under § 1983 are barred by sovereign immunity, and he has failed to state any claims under state law because he has not alleged compliance with the Government Claims Act.

It appears to the court that plaintiff may be able to allege facts to fix these problems. Therefore, plaintiff has the option of filing an amended complaint.

### III.   Options from Which Plaintiff Must Choose

Based on the court's screening, plaintiff has a choice to make. After selecting an option from the two options listed below, plaintiff must return the attached Notice of Election form to the court within 21 days from the date of this order.

**The first option available to plaintiff is to proceed immediately on the following individual capacity claims:**

   1. **Fourth Amendment unreasonable search claims against defendants Jodin, Morris, Albrecht, and Murphy based on subjecting plaintiff to multiple body scans and x-rays;**
   2. **Eighth Amendment failure to protect claims against Albrecht, Jodin, and Murphy based on their failure to address plaintiff's complaints of shoulder pain after extended handcuffing;**
   3. **Eighth Amendment deliberate indifference claims against Albrecht, Jodin, and Murphy based on their failure to return plaintiff's glasses; and**
   4. **First Amendment retaliation claims against Albrecht and Jodin based on defendants throwing away plaintiff's property after he filed a grievance and complained about their conduct to a supervisor.**

**By choosing this option, plaintiff will be agreeing to voluntarily dismiss all other claims against these defendants and all claims against defendants Deforest and St. Andre. The court will proceed to immediately serve the complaint and order a response from defendants Jodin, Morris, Albrecht, and Murphy.**

**The second option available to plaintiff is to file an amended complaint to fix the problems described in Section II.D. If plaintiff chooses this option, the court will set a deadline in a subsequent order to give plaintiff time to file an amended complaint.**

IV.   <u>Plain Language Summary of this Order for Party Proceeding Without a Lawyer</u>

Some of the allegations in the complaint state claims against the defendants and some do not. You have stated individual capacity (1) Fourth Amendment unreasonable search claims against defendants Jodin, Morris, Albrecht, and Murphy; (2) Eighth Amendment failure to protect and deliberate indifference claims against Albrecht, Jodin, and Murphy; and (3) First Amendment retaliation claims against Albrecht and Jodin. You have not stated any other claims against these defendants or any claims against defendants Deforest and St. Andre.

You have a choice to make. You may either (1) proceed immediately on the claims identified above and voluntarily dismiss the other claims or (2) try to amend the complaint. To decide whether to amend your complaint, the court has attached the relevant legal standards that

7

1 | may govern your claims for relief. See Attachment A. Pay particular attention to these standards
2 | if you choose to file an amended complaint.

3 | CONCLUSION

4 | In accordance with the above, IT IS HEREBY ORDERED that:

5 | 1. Plaintiff's requests for leave to proceed in forma pauperis (ECF Nos. 2, 9) are
6 | GRANTED.

7 | 2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff
8 | is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C.
9 | § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the
10 | appropriate agency filed concurrently herewith.

11 | 3. Plaintiff's motion to amend the complaint (ECF No. 11) is GRANTED to the extent
12 | plaintiff is being given the option of filing an amended complaint and is otherwise DENIED.

13 | 4. As set forth above, plaintiff has stated cognizable individual capacity claims against
14 | (1) Jodin, Morris, Albrecht, and Murphy under the Fourth Amendment for unreasonable search;
15 | (2) Albrecht, Jodin, and Murphy under the Eighth Amendment for failure to protect claims and
16 | deliberate indifference; and (3) Albrecht and Jodin under the First Amendment for retaliation.
17 | The complaint does not state any other claims for which relief can be granted.

18 | 5. Plaintiff has the option to proceed immediately on his individual capacity (1) Fourth
19 | Amendment unreasonable search claims against defendants Jodin, Morris, Albrecht, and Murphy;
20 | (2) Eighth Amendment failure to protect and deliberate indifference claims against Albrecht,
21 | Jodin, and Murphy; and (3) First Amendment retaliation claims against Albrecht and Jodin as set
22 | forth in Section II.C above, or to file an amended complaint.

23 | 6. Within 21 days from the date of this order, plaintiff shall complete and return the
24 | attached Notice of Election form notifying the court whether he wants to proceed on the screened
25 | complaint or whether he wants to file an amended complaint.

26 | 7. If plaintiff does not return the form, the court will assume that he is choosing to
27 | proceed on the complaint as screened and will recommend dismissal without prejudice of all
28 | claims and defendants except for the individual capacity (1) Fourth Amendment unreasonable

search claims against defendants Jodin, Morris, Albrecht, and Murphy; (2) Eighth Amendment failure to protect and deliberate indifference claims against Albrecht, Jodin, and Murphy; and (3) First Amendment retaliation claims against Albrecht and Jodin.

DATED: June 20, 2025

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM L. POWELL,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>A. ALBRECHT, et al.,<br><br>　　　　Defendants. | No. 2:23-cv-0520 DAD AC P<br><br><br>NOTICE OF ELECTION |

Check one:

\_\_\_\_\_ Plaintiff wants to proceed immediately on his individual capacity (1) Fourth Amendment unreasonable search claims against defendants Jodin, Morris, Albrecht, and Murphy; (2) Eighth Amendment failure to protect and deliberate indifference claims against Albrecht, Jodin, and Murphy; and (3) First Amendment retaliation claims against Albrecht and Jodin without amending the complaint.  Plaintiff understands that by going forward without amending the complaint he is voluntarily dismissing without prejudice all other defendants and all other claims against defendants Jodin, Morris, Albrecht, and Murphy pursuant to Federal Rule of Civil Procedure 41(a).

\_\_\_\_\_ Plaintiff wants time to file an amended complaint.


DATED:_____

　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　William L. Powell
　　　　　　　　　　　　　　　　　　Plaintiff pro se

1

Attachment A

This Attachment provides, for informational purposes only, the legal standards that may apply to your claims for relief. Pay particular attention to these standards if you choose to file an amended complaint.

I.   Legal Standards Governing Amended Complaints

If plaintiff chooses to file an amended complaint, he must demonstrate how the conditions about which he complains resulted in a deprivation of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 370-71 (1976). Also, the complaint must specifically identify how each named defendant is involved. Arnold v. Int'l Bus. Machs. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981). There can be no liability under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation. Id.; Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Furthermore, "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient." Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted).

Plaintiff is also informed that the court cannot refer to a prior pleading in order to make his amended complaint complete. See Local Rule 220. This is because, as a general rule, an amended complaint replaces the prior complaint. Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) (citations omitted), overruled in part by Lacey v. Maricopa County, 693 F.3d 896, 928 (9th Cir. 2012). Therefore, in an amended complaint, every claim and every defendant must be included.

II.   Legal Standards Governing Substantive Claims for Relief

A.   Unreasonable Search

The Fourth Amendment's right against unreasonable searches "extends to incarcerated prisoners; however, the reasonableness of a particular search is determined by reference to the prison context." Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988). The test for reasonableness "requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell v. Wolfish, 441 U.S. 520, 559 (1979). Searches done for the purpose of

1

harassment are not constitutionally valid—the Supreme Court has held that "intentional harassment of even the most hardened criminals cannot be tolerated." Hudson v. Palmer, 468 U.S. 517, 528 (1984).

### B. Failure to Protect

"[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (internal quotation marks and citations omitted). Second, the prison official must subjectively have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Id. (internal quotation marks and citations omitted). The official is not liable under the Eighth Amendment unless he "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. He must then fail to take reasonable measures to lessen the substantial risk of serious harm. Id. at 847. Negligent failure to protect an inmate from harm is not actionable under § 1983. Id. at 835.

### C. Deliberate indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Id. (some internal quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). A plaintiff can establish deliberate indifference "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment." Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988) (citation omitted).

////

### D. Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted). Plaintiff need not show that the alleged retaliatory action, in itself, violated a constitutional right. Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995) (to prevail on a retaliation claim, plaintiff "need not establish an independent constitutional interest" was violated); Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[P]risoners may still base retaliation claims on harms that would not raise due process concerns.").

### E. Property

The unauthorized deprivation of property by a prison official, whether intentional or negligent, does not state a claim under § 1983 if the state provides an adequate post-deprivation remedy, Hudson v. Palmer, 468 U.S. 517, 533 (1984), and "California Law provides an adequate post-deprivation remedy for any property deprivations," Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994) (per curiam) (citing Cal. Gov't Code §§ 810-895). Therefore, only an intentional and authorized deprivation of property may constitute an actionable § 1983 claim for violation of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. MacDougall, 773 F.2d 1032, 1036 (9th Cir. 1985).

### F. Conditions of Confinement

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met." Id. at 834.

"First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). To be sufficiently serious, "a prison official's act or

3

omission must result in the denial of 'the minimal civilized measure of life's necessities.'" Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "[R]outine discomfort inherent in the prison setting" does not rise to the level of a constitutional violation. Johnson v. Lewis, 217 F.3d 726, 732 (9th Cir. 2000). Rather, "extreme deprivations are required to make out a[n] [Eighth Amendment] conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 9 (1992). "More modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing." Johnson, 217 F.3d at 732.

Second, the prison official must subjectively have a "sufficiently culpable state of mind," "one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834 (citations omitted). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. He must then fail to take reasonable measures to lessen the substantial risk of serious harm. Id. at 847. Negligent failure to protect an inmate from harm is not actionable under § 1983. Id. at 835.

G. Americans with Disabilities Act and Rehabilitation Act Claims

To state a claim under Title II of the Americans with Disabilities Act (ADA), plaintiff must allege that:

> (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam)). The term "disability" is defined as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). For a viable claim under the Rehabilitation Act (RA), the program or activity at issue must also receive federal funds. See 29 U.S.C. § 794(b) (requiring the program or activity receive "Federal financial assistance"); Zukle v. Regents of the Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in analysis of

1  the rights and obligations created by the ADA and the Rehabilitation Act." (citations omitted)).

2  "The ADA prohibits discrimination because of disability, not inadequate treatment for disability."

3  Simmons v. Navajo County, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing Bryant v. Madigan, 84

4  F.3d 246, 249 (7th Cir. 1996)), overruled on other grounds by Castro v. County of Los Angeles,

5  833 F.3d 1060, 1068-71 (9th Cir. 2016) (en banc).

6        To be entitled to compensatory damages under the ADA, plaintiff must show the

7  discrimination was the result of deliberate indifference, which can be shown by alleging facts

8  showing that he notified the public entity of his need for accommodation and that the entity's

9  failure to act was "more than negligent, and involve[d] an element of deliberateness." Duvall v.

10  County of Kitsap, 260 F.3d 1124, 1138-39 (9th Cir. 2001) (citations omitted).

11        Plaintiff cannot state a claim under the ADA or the RA against any defendant in their

12  individual capacities. Stewart v. Unknown Parties, 483 F. App'x 374, 374 (9th Cir. 2012) (citing

13  Lovell v. Chandler, 303 F.3d 1039, 1052); see also Vinson v. Thomas, 288 F.3d 1145, 1156 (9th

14  Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in

15  her individual capacity to vindicate rights created by Title II of the ADA or section 504 of the

16  Rehabilitation Act.")); Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d

17  Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for

18  individual capacity suits against state officials." (citations omitted)). To state a claim under the

19  ADA or RA, plaintiff must bring a lawsuit against a public entity or against a person in their

20  official capacity. See Miranda B. v. Kitzhaber, 328 F.3d 1181, 1187 (9th Cir. 2003) (per curiam)

21  (A state official sued in their official capacity "represents a 'public entity' under Title II").

22        H.  False Disciplinary

23        Prisoners do not have a liberty interest in being free from false accusations of misconduct.

24  See Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997) ("there are no procedural safeguards

25  protecting a prisoner from false retaliatory accusations"); accord, Sprouse v. Babcock, 870 F.2d

26  450, 452 (8th Cir. 1989) ("Sprouse's claims based on the falsity of the charges and the

27  impropriety of Babcock's involvement in the grievance procedure, standing alone, do not state

28  constitutional claims."); Freeman v. Rideout, 808 F.2d 949, 951 (2nd Cir. 1986) ("The prison

inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest."); Hanrahan v. Lane, 747 F.2d 1137, 1141 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections . . . are provided.")

### I. Disciplinary Due Process

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Rather, with respect to prison disciplinary proceedings that include the loss of good-time credits, an inmate must receive (1) twenty-four-hour advanced written notice of the charges against him, id. at 563-64; (2) "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action," id. at 564 (internal quotation marks and citation omitted); (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," id. at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact finder, id. at 570-71. A finding of guilt must also be "supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985).

### J. Supervisory Liability

"Liability under § 1983 must be based on the personal involvement of the defendant," Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) (citations omitted). Furthermore, "[t]here is no respondeat superior liability under section 1983," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted), which means that a supervisor cannot be held responsible for the conduct of his subordinates just because he is their supervisor. "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Id.

### K. Official Capacity Claims

Damages claims under § 1983 against state officials acting in their official capacity are barred by sovereign immunity because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" and therefore "no different from a suit against the State itself." Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citations omitted). However, state officials sued in their official capacity for prospective injunctive relief are "persons" within the meaning of § 1983. Id. n.10.

### L. State Law Claims

To state a viable state law claim against a state employee or entity, a plaintiff must allege compliance with the Government Claims Act. See State v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240, 1237 (2004) (for claims against the state, timely presentation of a claim under the Government Claims Act is an element of the cause of action and must be pled in the complaint); Cal. Gov't Code § 900.6 (defining "State" as "the State and any office, officer, department, division, bureau, board, commission or agency of the State claims against which are paid by warrants drawn by the Controller").